## MRS. MAGGIE GRIFFIN, et al. v. FAIN MEADOWS, et al.

Wertern Section. February 5, 1926.

Certiorari denied by Supreme Court, April 10, 1926.

1. **Contracts.** Contracts made in contemplation of marriage held not to vest children of one of the parties with a remainder interest in her real estate.

In an action to recover a tract of land where the complainants claimed title through a certain marriage contract entered into by their mother prior to her second marriage, wherein it was stated that her husband should acquire no right in her property and at her death all of her said property, in existence at her death, should descend to her children, held that the contract created no interest in the land in the children and that she could at any time convey the fee to the land.

2. **Costs.** The question of costs is always within the discretion of the chanqellor.

The question of costs always lies within the discretion of the chancellor and unless this discretion has been abused the appellate court will not disturb his findings.

3. **Costs.** Costs of taking unnecessary depositions properly taxed against party taking them.

In an action to recover a tract of land where the defendant took twelve depositions and a great deal of evidence of the witnesses was cumulative and unnecessary, held that the chancellor properly taxed a part of the costs against the defendant although the defendant was successful in the case.

Appeal from Chancery Court, Obion County; Hon. Hal Holmes, Chancellor.

Affirmed.

Pierce & Fry, of Union City, for appellant.

F. G. Smith and T. O. Morris, of Union City, for appellee.

OWEN, J. The complainants have appealed from a decree in the chancery court of Obion county dismissing their bill. The defendants have also filed the record for error, having excepted to a judgment against them for certain costs incidental to the taking of several depositions mentioned in the decree.

The bill was filed to recover a tract of 137 acres of land lying in the Ninth Civil District of Obion county, which complainants insists they owned in remainder, and that ther mother, Mrs. Texada Finch (also known as Texada Harris) had a life estate. It appears that Mrs. Texada Finch was the widow of one Tom Finch who by his last will and testament devised the 137 acres in controversy to his widow, Texada Finch, in fee. Tom Finch died about 1887 or 1888, leaving his widow, Texada Finch, and five children. One of the children died some few years after the death of the father, unmarried and without issue. The four complainants are the children of Tom Finch and Texada Finch.

On the 22d day of June, 1889, Texada Finch entered into a marriage contract with one James B. Harris, and shortly thereafter married the said James B. Harris. Said marriage contract, which is the foundation for this law suit is in the following words:

"State of Tennessee ⎫

Obion County. ⎭ "Know all men by these present that:

Whereas we, James B. Harris and Mrs. Texada Finch, both of the county and state aforesaid, have entered into an agreement to enter into the bonds of matrimony, soon to be solemized: and we have agreed, and do hereby enter into a Marriage Contract, for the consideration of One Dollar to him, the said James B. Harris, paid by the said Mrs. Texada Finch.

"The said Harris hereby relinquishes and releases to her, the said Mrs. Texada Finch, all the right, title and claim that he may acquire by marriage to her estate, now owned by her, consisting of one hundred and thirty-seven acres of land, lying in the 9th civil district of Obion county, being the same land willed to her by her deceased husband, Thomas A. Finch; and also to her personal property, consisting of three horses, and two mules, two cows and six yearlings, and about forty head of hogs, and their increase; also two wagons and harness, and one buggy and harness, household and kitchen furniture and farming implements.

"And in consideration of the premises, it is expressly agreed and stipulated by and between the said Harris and the said Mrs. Finch that she reserves the title to said property, and the increase and use thereof, to herself, in as full and ample manner as if she were a single woman, free from any past or future debts or contracts of the said Harris. And it is hereby agreed that, AT THE DEATH OF SAID MRS. FINCH, ALL OF HER SAID PROPERTY, herein reserved to herself, **IN EXISTENCE AT HER DEATH**, shall descend to and vest in her five children born to the said Thomas A. Finch, viz: Maggie, Mary, Tom, Daisy, Jessie and Roach, and if any child shall be dead at that date, that child's share to go to said child's children if any in existence.

"And in further consideration (of) contemplated marriage, we hereby mutually enter into this contract.

"Witness our hands this, the 22nd day of June 1889.

His

"Attest. J. G. Smith" (Signed) "James B. X Harris."

Mark

"F. J. Smith." (Signed) "Texada Finch."

One child was born as a result of the marriage of Texada Finch to James B. Harris, and was living at the time of this litigation. It appears that soon after the execution of this marriage contract that James B. Harris and Texada Finch were married, and that

they resided on this 137 acres for about two years. James B. Harris owned no property at the time of his marriage and we infer that he never accumulated any in his own name during the time he was married to Texada Finch. It appears that he was a hired hand and working for Mrs. Finch on the farm at the time the marriage contract was executed and at the time of the marriage.

About two years after the execution of this marriage contract, James B. Harris and his wife, Texada Harris, conveyed the 137 acres of land described in the bill to one Jackson, in consideration of Jackson deeding to Texada Harris a tract of 112 acres of land near the village of Glass in the county of Obion, being in the 14th Civil District of said county. Mr. Jackson conveyed to Texada Finch a tract of 112 acres of land and paid a difference of $1100 between the 137 acres and the 112 acres. The 137 acres was transferred by a number of conveyances until it passed into the hands of the two defendants Fain Meadows and G. W. Forester. The 137 acres is made up of several tracts. The defendants do not own the 137 acres jointly but each owns a certain portion of the same.

The record indicates that the exchange was made between W. S. Jackson and Texada Harris and husband for the purpose of Mrs. Harris moving to a vicinity where there was a splendid school that she might educate her four children, the complainants in this case. She did live on the 112 acres purchased from Jackson for something like twelve or fourteen years, when she sold the said 112 acres, and during this period of time that she resided on the Jackson tract she sent her children, the complainants, to school at Glass, which school was under a well known educator, Prof. B. Moore.

Mrs. Harris died in 1924. She had lived for a number of years prior to her death in Tiptonville, in Lake county. She executed her last will and testament, and it appears that she owned at the time of her death a house and lot in Tiptonville, and that she owned bank stock and other personalty worth $1500. There is an agreement in the record that her estate was reasonably worth $6500, and the indebtedness of her estate was $1146.20. After making a small bequest to her granddaughter she gave all the rest of her property, after providing for the payment of the debts to her five children, the four complainants and her daughter Mrs. Idella Newkirk who was a child of J. B. Harris.

The defense to complainant's bill was that Mrs. Harris had a perfect right to convey the 137 acres of land devised to her by her first husband Tom Finch, and that the defendants and their predecessors in title had had open, notorious and adverse possession of the lands in controversy for more than thirty years and that under chapter 90 of the Acts of 1923, which is an Act to quiet titles, complainants were barred. It is complainants' insistence that by virtue of the marriage contract Mrs. Finch divested herself of

title to the 137 acres, except the life estate, and vested the remainder in her children, born as a result of her marriage to Tom Finch, the testator, and that the Act of 1923, chapter 90, has no application in the instant case because the statute would, not begin to run against these complainants until the life estate fell in, or terminated.

It appears that the Chancellor dismissed the complainant's bill on the ground that the complainants were barred by the statute of limitation. Complainants excepted and perfected an appeal and have assigned three errors, as follows:

"First: The court erred in dismissing complainant's bill and in refusing to grant complainants any relief.

"Second: The court was in error in dismissing complainants' bill and holding that chapter 90 of the Acts of 1923 barred complainant's right to recover in this cause.

The third assignment is the same as the first.

The question to be determined is whether or not the complainants received any title to the 137 acres by virtue of the marriage contract, or did Mrs. Texada Finch still retain an absolute title to the 137 acres of land, and did she have a right to convey the fee to W. S. Jackson.

We are of the opinion that Mrs. Finch did not divest the remainder interest out of herself and divest it in her children by the terms of said marriage contract, but the proper construction to be placed upon said contract is, that she did not intend that her future husband, James B. Harris should have any interest in said tract of land by curtesy or otherwise, and that what property she had in existence at her death would descend to and vest in her five children. She did not have the 137 acres at the time of her death and we are of opinion that she had the right to convey the fee, and did convey the fee, to which she executed a deed in fee simple to W. S. Jackson.

It is noticed that in the contract Mrs. Finch expressly agreed and stipulated that she reserved to herself the title to said property and the increase and use thereof and "in as full and ample manner" (meaning after she became married to Harris), as if she were a single woman, and free from any past or future debts or contracts of the said Harris. Then she further provided that "all of her said property herein reserved to herself in existence at her death shall descend to and vest in said five children," naming them. She did not say that all of her property mentioned therein should descend to her children, but all the property in existence at the time of her death.

We are of opinion that she had as much right to convey the property and give a good title under this contract as if she had made her will the same day she executed the contract, and devised the property to her five children by Tom Finch and then sold the

property before she died. Her children as devisees, devising in the same manner as stated in the marriage contract, did not receive title to any property that the testatrix had conveyed prior to her death. We agree with the Chancellor in his final conclusion in dismissing complainants' bill.

We do not deem it necessary to pass upon chapter 90, Acts of 1923. We are of opinion that Jackson, the predecessor in title to the defendant, received a good title in the conveyance from Mrs. Texada Harris of the 137 acres of land, and the complainant's bill was properly dismissed. ·

It results that the assignments of error of complainants are overruled and disallowed.

As to the record being filed for error, the question of costs is always within the discretion of the chancellor, but we find that the defendants took twelve depositions. A great deal of the evidence of these witnesses was cumulative and unnecessary, in our opinion. The court taxed the defendant with the taking of ten depositions, and we think his taxation of the costs was proper and just. The writ of error is dismissed. The decree of the Chancellor is affirmed, in dismissing complainant's bill and in taxing the costs as he so adjudged. The complainants and their surety on the appeal bond will be taxed with nine-tenths of the costs of the appeal and the defendants will be taxed with one-tenth of the costs of the appeal, for which execution will issue accordingly.

Heiskell and Senter, JJ., concur.